IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Messino, <br><br> Plaintiff, <br><br> v. <br><br> City of Elmhurst and Elmhurst Police Officer Jason Krueger, Star No. 244, <br><br> Defendants. | Case No. 19-cv-2985 <br><br> Judge Mary M. Rowland |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff John Messino alleges that Elmhurst police officer Jason Krueger arrested, detained, and initiated a criminal complaint against him without probable cause. Plaintiff sues Krueger and Krueger's employer, the City of Elmhurst, under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights and for malicious prosecution under Illinois law. Defendants have moved for summary judgment on all claims. [47]. For the reasons explained below, this Court grants in part and denies in part Defendants' motion.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which

1

facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

## BACKGROUND[1]

### I. June 27, 2018 Incident

Plaintiff lives at 531 North Walnut Street, in Elmhurst, Illinois. [46] ¶ 7. At all relevant times, Plaintiff worked at the CVS pharmacy in Glendale Heights,

---

[1] This Court takes the following facts from Defendants' statement of facts [46], Plaintiff's response to Defendants' statement of facts [49-1], Plaintiff's statement of additional facts [49-2], and Defendants' response to Plaintiff's statement of additional facts [51].

Illinois, which sits about seven miles from his home. [49-2] ¶ 1. At all relevant times, Defendant City of Elmhurst employed Defendant Krueger as a police officer. [46] ¶ 6.

On June 27, 2018, at or around 11:18 a.m., Krueger responded to a dispatch to investigate a neighbor dispute reported by Tina Blazer, who resides in a single-family residence located at 535 North Walnut Street, Elmhurst, Illinois. *Id.* ¶ 9. There exists a paved, City-owned right-of-way known as West Gladys Avenue which sits, in part, along the north boundary of Plaintiff's property, and in another part, along the south boundary of Blazer's property. *Id.* ¶ 10. West Gladys Avenue runs the length of both lots and dead-ends at the east property boundary of the lots. *Id.* Residents at both 531 North Walnut and 535 North Walnut use West Gladys Avenue as a driveway for access to their respective properties. *Id.*

Upon arrival, Krueger met with Blazer at her home, where according to Krueger, Blazer related that one of her neighbors at 531 North Walnut backed his light blue Ford pickup truck down the right-of-way separating the two properties into the shrubs and bushes, as well as a wooden marker stake in front of the bushes. *Id.* ¶ 11. Plaintiff drives a light blue Ford Ranger pickup truck. *Id.* ¶ 14. Krueger walked with Blazer to inspect the bushes; he observed no damage to the bushes but noted a broken wooden marker stake. *Id.* ¶ 12; [46-3] at 6. Krueger then walked with Blazer back to her home. [46] ¶ 12.

About ten to fifteen minutes after he arrived at Blazer's home, Krueger observed Plaintiff drive his vehicle (the light blue pickup truck) north on North

3

Walnut Street, turn east driving onto the right-of-way, park in front of his house at 531 North Walnut, exit his vehicle, and enter his home. *Id.* ¶ 13. After Krueger saw Plaintiff arrive at his home, he radioed for another officer. *Id.* ¶ 16. Minutes later, an Officer Carney arrived at 535 North Walnut in full uniform, driving a fully marked City police vehicle. *Id.*

Krueger advised Carney of the situation as related by Blazer. *Id.* ¶ 17. The officers then went to the front door of 531 North Walnut and knocked on the door. *Id.* After Plaintiff answered the door, Krueger asked Plaintiff to speak with him. *Id.* Krueger told Plaintiff that Blazer had complained about Plaintiff backing his truck out of the driveway into the bushes located on Blazer's property. *Id.* ¶ 18. Plaintiff said to Krueger that he may have gotten close to or brushed the neighbor's bushes "but did not hit anything." *Id.* ¶ 20; [46-1] at 72–73.

Krueger asked Plaintiff if he had any identification. [46] ¶ 23; [49-2] ¶ 9. Plaintiff provided Krueger with a revoked driver's license and a restricted driver's permit. [46] ¶ 24; [49-2] ¶ 9. Plaintiff's permit described his "Restrictions" as "CVS PHARMACY 230 EAST NORTH AVENUE GLENDALE HEIGHTS, IL," and his work hours as "Rotating shifts and rotating days as assigned by employer – subject to law enforcement verification[;] 3 mile radius." [49-2] ¶ 10; [46] ¶ 31; [23-1]. The restricted driver's permit also authorized Plaintiff "Additional travel time outside of the assigned work hours to drive to & from work location and authorizes permittee to drive in conjunction with employment related duties within the assigned work hours and radius." [46] ¶ 31; [23-1]. Plaintiff testified that his restricted driving

4

permit allowed him only to go from home to work, to get his BAIID (a device installed in his vehicle that tests his blood alcohol content) recalibrated, and to obtain repairs and maintenance for his car. [46-1] at 43–44. Plaintiff testified that he did not get any repairs and maintenance or his BAIID recalibrated that day. *Id.* at 44–45.

That day, Plaintiff's employer originally scheduled him to begin working his shift at 2:00 p.m. [49-2] ¶ 2. According to Plaintiff, he left his home earlier—around 10:30 a.m.—to drive to work because his supervisor had called and requested that he report to work earlier than his scheduled start time of 2:00 p.m. *Id.* ¶ 3; [46-1] at 59. Plaintiff maintains that, while driving to work, he realized he had forgotten his cell phone, so he turned his vehicle around to drive home for his cell phone; on his way home, he realized his vehicle needed gas, so he stopped for gas before proceeding home. [49-2] ¶ 4; [46-1] at 60–61.

The parties dispute exactly what Plaintiff told Krueger about his whereabouts. They agree that Plaintiff told Krueger that: (1) he did not actually work that morning; (2) he was scheduled to work at 2:00 p.m.; and (3) that he was returning home from getting gas. [46-1] at 77–79; [51] ¶ 11; [46] ¶¶ 25, 27, 28, 45. According to Plaintiff, he also told Krueger that he had been driving to work when he backed out of the driveway that morning. [46-1] at 7. Plaintiff testified that he was uncertain whether he told Krueger that he returned home because he forgot his cell phone. *Id.* at 80.

Krueger, for his part, insists that Plaintiff never related that he was going to work earlier than his originally scheduled 2:00 p.m. shift, or that he returned home to retrieve his cell phone. [46-3] at 9; [51] ¶ 11. As Krueger testified, "He never gave

5

me reason to believe he was going to or from work." [46-3] at 9. As such, he disputes that Plaintiff ever told him he was "on his way to work, realized he didn't have his cell phone and returned home." *Id.*

**II. The Arrest and State Court Proceeding**

After reviewing Plaintiff's restricted driver's permit, Krueger told Plaintiff that the permit does not allow him to get gas. [46] ¶ 32. Krueger then informed Plaintiff that he was under arrest for driving outside of the restrictions of his restricted driver's permit. *Id.* ¶ 34. He took Plaintiff into custody, placed handcuffs on Plaintiff's wrists, put Plaintiff in the back of the City police vehicle, and transported him the police department headquarters. *Id.* ¶ 34. They arrived at headquarters at about 12:18 p.m. *Id.* Krueger then booked and processed Plaintiff and released Plaintiff on an I-Bond at approximately 1:25 p.m. *Id.* ¶ 35. The I-Bond required Plaintiff to appear in court at a date and time yet to be determined; it contained no other conditions. *Id.* ¶ 37; [46-5] at 6.

Krueger subsequently initiated a criminal charge against Plaintiff. [46] ¶ 38. The charge ultimately terminated in Plaintiff's favor on November 29, 2018. *Id.*

**III. Plaintiff's Claims and Procedural History**

Plaintiff's (operative) amended complaint asserts claims for: (1) unreasonable seizure against Krueger (Count I); unreasonable pretrial detention against Krueger (Count II); and malicious prosecution against both Defendants (Count III). [21].

6

**ANALYSIS**

Defendants have moved for summary judgment on all three counts of Plaintiff's amended complaint. [47]. This Court analyzes each count in order below.

**I. Count I: Unreasonable Seizure**

In Count I of his amended complaint, Plaintiff asserts that Krueger contravened the Fourth Amendment's prohibition against unreasonable seizures by arresting him without probable cause. [21] at Count I. Krueger argues that: (1) he possessed probable cause to arrest Plaintiff; and (2) the qualified immunity doctrine bars Plaintiff's claim against him. [48] at 3–9.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To prevail on his claim for unreasonable seizure under the Fourth Amendment, Plaintiff must prove that Krueger lacked probable cause to arrest him. *Cibulka v. City of Madison*, 992 F.3d 633, 638 (7th Cir. 2021). Probable cause constitutes an absolute bar to Fourth Amendment unreasonable seizure claims. *Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021), *reh'g denied* (July 12, 2021). Officers possess probable cause "when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense." *United States v. Hammond*, 996 F.3d 374, 391 (7th Cir. 2021) (quoting *United States v. Haldorson*, 941 F.3d 284, 290–91 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 1235 (2020)). The probable cause inquiry is

7

objective; thus, an "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *United States v. Reedy*, 989 F.3d 548, 554 (7th Cir. 2021) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see also United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 824 (2020).

Krueger argues that probable cause existed to arrest Plaintiff based upon his violation of the parameters of his restricted driving permit. Relevant here, section 6-205 of the Illinois Vehicle Code sets forth the purposes for which a restricted driving permit may be issued. *People v. Close*, 939 N.E.2d 463, 470 (Ill. 2010). It states, in relevant part:

> the court may recommend and the Secretary of State in his discretion, … issue to the person a restricted driving permit granting the privilege of driving a motor vehicle between the petitioner's residence and petitioner's place of employment or within the scope of the petitioner's employment related duties, … if the petitioner is able to demonstrate that no alternative means of transportation is reasonably available and that the petitioner will not endanger the public safety or welfare; provided that the Secretary's discretion shall be limited to cases where undue hardship, as defined by the rules of the Secretary of State, would result from a failure to issue the restricted driving permit.

625 Ill. Comp. Stat. Ann. 5/6-205. Section 6-303 of the Code provides that:

> any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit, or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state, except as may be specifically allowed by a judicial driving permit issued prior to January 1, 2009, monitoring device driving permit, family financial responsibility driving permit, probationary license to drive, or a restricted driving permit issued

8

> pursuant to this Code or under the law of another state, shall be guilty of a Class A misdemeanor.

625 Ill. Comp. Stat. Ann. 5/6-303(a). Read together, the two sections make it a Class A misdemeanor for a restricted driving permit holder to drive outside the parameters of his or her permit.

Based upon the record, there exists a genuine dispute as to whether probable cause existed to arrest Plaintiff for violating the parameters of his restricted driving permit. The parties agree that Plaintiff told Krueger that he did not work that morning, that he was scheduled to work at 2:00 p.m., and that he was returning home from obtaining gas. Krueger insists that Plaintiff never said he was on his way to or from work that morning. According to Krueger, he knew only that Plaintiff had gone to get gas and believed thus that Plaintiff had driven outside of the parameters of his restricted driving permit which allowed him to drive only to and from work. If a jury believed Krueger, it could find that a reasonable officer possessed probable cause that Plaintiff had violated the Illinois Vehicle Code.

Yet Plaintiff has a different account of his exchange with Krueger. Plaintiff maintains that he told Krueger that he was on his way to work that morning and that he had returned home upon realization that he forgot his cell phone. A jury could reasonably believe Plaintiff's account, too. And if it did, the jury could conclude that Krueger lacked probable cause to arrest Plaintiff because he possessed facts indicating that Plaintiff was driving within the parameters of his permit, i.e., to and

9

from work. In short, based upon the disputed facts, a triable issue exists as to whether Krueger possessed probable cause.

The factual disputes here also preclude qualified immunity, a defense that Krueger raises. [48] at 7–9. The doctrine of qualified immunity "balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and 'affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices' on the other." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (quoting *Weinmann v. McClone*, 787 F.3d 444, 447–48 (7th Cir. 2015)). In determining whether qualified immunity applies, courts ask: (1) whether an official's conduct violated a constitutional right; and if so, (2) whether that right was clearly established at the time of the alleged violation. *Id.* In the Fourth Amendment context, qualified immunity exists where there is "arguable probable cause," *Cibulka*, 992 F.3d at 638, or in other words, where a reasonable officer "could have mistakenly believed that probable cause existed," *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015) (quotation omitted). Drawing all inferences in Plaintiff's favor at this stage, a reasonable jury could find that, based upon Plaintiff's version of the facts, Krueger arrested Plaintiff even though he knew that Plaintiff was traveling to and from work, an action allowed under his permit. No reasonable officer could have mistakenly believed that probable cause existed to arrest Plaintiff based upon Plaintiff's version

10

of the facts. Accordingly, the qualified immunity doctrine does not entitle Krueger to summary judgment.

For these reasons, this Court denies summary judgment on Count I of Plaintiff's amended complaint.[2]

**II. Count II: Unreasonable Detention**

Plaintiff alleges in Count II that Krueger violated the Fourth Amendment by unlawfully detaining him. [21] at Count II. An unlawful pretrial detention occurs "when the police hold someone without any reason before the formal onset of a criminal proceeding." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918 (2017). Like an arrest, a pretrial detention constitutes a Fourth Amendment "seizure" and "is justified only on probable cause to believe that the detainee has committed a crime." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (quoting *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019)). The Seventh Circuit recognizes two possible theories of unlawful pretrial detention: (1) a detention attendant to an arrest unsupported by probable cause; and (2) a detention attendant to pretrial release if the "conditions of that release impose significant restrictions on liberty." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015–16 (7th Cir. 2019); *see also Artman v. Gualandri*, No. 20 C 4501, 2021 WL 2254961, at *5 (N.D. Ill. June 3, 2021).

---

[2] Krueger also suggests, without further explanation, that he had probable cause—or arguable probable cause—to arrest Plaintiff for criminal damage to property or vandalism. [48] at 9. He fails, however, to fully develop this argument, and thus waives it. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

11

Plaintiff apparently bases his unlawful detention claim upon both the detention attendant to his arrest and the subsequent bond conditions imposed upon him during pretrial release. [49] at 11–12. To the extent Plaintiff bases his unlawful detention claim upon initial arrest, however, the claim is redundant to his unlawful seizure claim in Count I because both counts "are premised on the same alleged conduct and implicate the same constitutional right—the right to be free from unlawful detentions absent probable cause." *See Artman*, 2021 WL 2254961, at *5 (dismissing a count for false arrest as being redundant to a count alleging unlawful detention).

And to the extent that Plaintiff bases Count II upon bond conditions, Seventh Circuit precedent forecloses that theory in light of the facts of this case. In *Smith v. City of Chicago*, the court of appeals held that only bond conditions presenting "significant restrictions of freedom" amount to a Fourth Amendment seizure. 3 F.4th 332, 342 (7th Cir. 2021). Requirements to "appear in court" or "request permission before travel" do not constitute significant restrictions of freedom. *Id.* Here, Plaintiff's I-Bond required only that he appear in court; it contained no other restrictions of freedom, much less "significant restrictions of freedom." [46-5] at 6. Thus, Plaintiff's theory of unlawful detention based upon bond conditions fails as a matter of law because those bond conditions do not amount to a Fourth Amendment seizure.

In sum, to the extent Plaintiff's unlawful detention claim is based upon the detention attendant to his arrest, that claim is duplicative of Count I. And to the

12

extent Plaintiff bases his claim upon bond conditions, the Seventh Circuit's decision in *Smith* clearly forecloses that theory. For these reasons, this Court grants summary judgment to Krueger on Count II.

### III. Count III: Malicious Prosecution

In Count III, Plaintiff asserts a claim for malicious prosecution against Krueger individually and the City of Elmhurst on a vicarious liability theory. [21] at Count III.

To succeed on this claim under Illinois law, Plaintiff must prove: Defendants commenced an original judicial proceeding; (2) the proceeding terminated in Plaintiff's favor; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Lund v. City of Rockford*, 956 F.3d 938, 949 (7th Cir. 2020). In moving for summary judgment, Defendants argue that: (1) the existence of probable cause defeats the third element of Plaintiff's claim; and (2) the Illinois Tort Immunity Act immunizes their actions. [50] at 14. Neither argument is persuasive.

First, Defendants argue that the same facts justifying probable cause to arrest Plaintiff also justify initiation of a criminal complaint against him. [50] at 14. But because this Court has already found the existence of genuine issues of material fact over whether Krueger possessed probable cause to arrest Plaintiff, it necessarily also finds the existence of triable issues as to whether Krueger possessed probable cause to initiate the state criminal proceeding. *See Hill v. City of Harvey*, No. 17 C 4699, 2020 WL 5800729, at *5 (N.D. Ill. Sept. 29, 2020) (finding that disputed evidence

13

concerning probable cause precluded summary judgment on Fourth Amendment and malicious prosecution claims). The disputed facts surrounding probable cause thus similarly preclude summary judgment on Plaintiff's malicious prosecution claim.

Defendants also unsuccessfully invoke the Illinois Tort Immunity Act. The particular section of the Act that they rely upon, *see* [50] at 14, provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts *maliciously and without probable cause*." 745 Ill. Comp. Stat. Ann. 10/2-208 (emphasis added). The trier of fact can infer malice from an absence of probable cause. *Williams v. City of Chicago*, 733 F.3d 749, 760 (7th Cir. 2013). Thus, Defendants can only successfully invoke immunity pursuant to section 2-208 if this Court finds that probable cause existed to initiate Plaintiff's criminal prosecution. Because, as discussed repeatedly, fact issues persist as to whether probable cause existed to prosecute Plaintiff, this Court concludes that section 2-208 does not immunize Defendants against Plaintiff's malicious prosecution claim.

For these reasons, this Court denies summary judgment on Count III.

## CONCLUSION

For the reasons explained above, this Court grants in part and denies in part Defendants' motion for summary judgment [47]. This Court grants summary judgment to Defendants on Count II of Plaintiff's amended complaint but Counts I and III stand.

14

E N T E R:

Dated: September 23, 2021

_____
MARY M. ROWLAND
United States District Judge